IN THE CIRCUIT COURT OF PHELPS COUNTY, MISSOURI

*FILED*

EVELYN WOOD, ·                                     )
Individually and on behalf of all others similarly )                          *OCT 0 1 2012*
situated,                                          )
                                                   )                         SUE BROWN
                                                   )                      CIRCUIT CLERK
             Plaintiff,                            )-                   PHELPS COUNTY, MO
                                                   )
      vs.                                          )   Case No. 12PH-CV00949
                                                   )
                                                   )
LOWE'S HOME CENTERS, INC.                          )
                                                   )
             Defendant.                            )
                                                   )

## FIRST AMENDED PETITION

COMES NOW Plaintiff Evelyn Wood ("Plaintiff"), Individually and on behalf of a Class

of Similarly Situated Individuals ("Class Members"), by and through her attorneys, and for her

causes of action against the defendant, Lowe's Home Centers, Inc. ("Lowe's" or "Defendant"),

hereby states to the Court as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff brings this class action under the laws of the state of Missouri seeking

compensation for statutory violations of Computer Tampering and Missouri Merchandising Prac-

tices Act statutes, as well as common-law claims of conversion, trespass to chattels, invasion of

privacy by unreasonable intrusion, and unjust enrichment.

·  2.     This matter arises from Defendant's practices of coding its web pages to cause

tracking code—its own and that of third parties—to be downloaded to, stored on, and activated·

on to the computers of Plaintiff and Class Members in Missouri and elsewhere for the purpose of

tracking consumers' internet history and activities. The manner in which Defendant codes its

website prevents Plaintiff and Class Members from detecting or controlling Defendant's and·

1

third parties' internet tracking code. Defendant deploys this code to profit from harvesting private information from and about such persons, across their web-browsing activity, even when they specifically set their privacy controls to prevent tracking.

3.     Defendant's actions, as more specifically alleged below, constitute violations of Missouri statutory and common law.

4.     Plaintiff brings this action to recover her own damages directly resulting from Defendant's unlawful actions, and she also brings this action on behalf of and to recover damages for the Class Members, and for equitable and injunctive relief.

5.     Defendant's unlawful actions were perpetrated against Plaintiff and Class Members on or after June 2007 (the "Class Period").

## JURISDICTION

6.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. Defendant is not a Missouri citizen for purposes of federal court diversity analysis. No individual Plaintiff's or Class Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of costs and attorneys' fees. Moreover, the total damages of Plaintiff and Class Members, inclusive of costs and attorneys' fees, will not exceed $4,999,999 and is less than the five million dollar ($5,000,000) minimum threshold to create federal court jurisdiction.

7.     Plaintiff and Class Members stipulate pursuant to *Bell v. Hershey,* 557 F.3d 953 (8th Cir. 2009) and *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069 (8th Cir. 2012) that they seek to recover no more than $4,999,999 in this case. Plaintiff further stipulates that she does not and will not seek or accept punitive damages in this case and that she disclaims all claims and causes of action which exist or may exist under Federal Law. As such, there is neither diversity jurisdic-

2

Lowe's  122

tion, nor Class Action Fairness Act jurisdiction, nor a federal question for this claim to be brought in federal court. Pursuant to Missouri Rule of Civil Procedure 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

8.     This Court has personal jurisdiction over Defendant pursuant to Missouri Code §. 506.500, as Defendant has had more than minimum contact with the State of Missouri and has availed itself of the privilege of conducting business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that give rise to civil liability.

9.     This Court has specific jurisdiction over Defendant because Defendant owns and operates the www.lowes.com website that is the subject of this lawsuit. Defendant's www.lowes.com website deliberately targets and exploits Missouri residents, and this case arises out of and relates to that exploitation. Defendant's website downloads internet tracking technologies to and trespasses upon the computers of Missouri residents in Missouri. Defendant then extracts personal information about Missouri residents and exploits it for Defendant's financial gain.

10.    Venue is proper in this forum pursuant to Missouri Code § 508.010, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this county.

## PARTIES

11.    Evelyn Wood is a citizen and resident of St. James, Missouri who, during the Class Period, accessed Defendant's website at www.lowes.com.

12.    Lowe's Home Centers, Inc. is foreign corporation incorporated in the State of North Carolina and headquartered in Mooresville, North Carolina. Lowe's is the second largest

3

home improvement retailer worldwide with sales to residents of the State of Missouri through its website, www.lowes.com and its retail stores in the State of Missouri. Lowes Companies, Inc. can be served through its Registered Agent, Corporation Service Company, 327 Hillsborough Street, Raleigh, North Carolina 27603.

## ALLEGATIONS OF FACT

13. Defendant is a leading home improvement retailer who has hundreds of thousands of products available for sale on its website to consumers.

14. Defendant coded its web pages to cause its tracking code and third parties' tracking code to be downloaded to, stored on, and activated on to the computers of Plaintiff and Class Members in Missouri and elsewhere.

15. Defendant has invested substantial resources in developing a website to attract consumers, such as Evelyn Wood and Class Members, to visit.

16. Defendant generates revenue from third parties who wish to track Plaintiff and Class Members' online activity by installing code on Plaintiff's and Class Members' own computer hard drives. The more visitors that Defendant attracts to its website, the more revenue it earns from the third parties.

17. Defendant and the third parties whose code it includes on its web pages engage in tracking Plaintiff and Class Members because of the economic value of the information they collect about Plaintiff and Class Members, and their browsing activities.

18. Defendant is responsible for and control the code that comprises its web pages, including its own and third parties' tracking code, and Defendant causes such code to be incorporated into its web pages in way that will cause it to be activated when Plaintiff and Class Members visit its website.

4

Lowe's   124

19. Defendant was able to create this valuable web property and generate substantial revenue through its conduct in violation of Missouri law, as described herein.

## Lowe's Deposit of Tracking Cookies on Plaintiff's and Class Members' Computers

20. Defendant assigns unique user IDs to each Class Member (including Plaintiff) and store the IDs in the cookies on the Class Member's hard drive.

21. Defendant uses these cookies to track the Class Member's web-browsing activities on the web pages of Defendant's site; and on the Class Member's subsequent visits to the site, Defendant accesses and updates the cookies previously set and update its profile of the Class Member.

22. Defendant coded the pages of its www.lowes.com website so that, within the first few seconds of the Class Member's first visit to Defendant's www.lowes.com home page, approximately nine browser cookies are deposited on the Class Member's computer hard drive, eight of which persist after the Class Member terminates the browsing session, expiring anywhere from approximately 14 days to ten years from the date of the Class Member's visit. In addition, 20 third parties deposited approximately 39 more browser cookies on the Class Member's hard drive, 37 of which persist after the Class Member terminates the browsing session, expiring anywhere from approximately one day to 24.95 years from the date of the Class Member's visit.

23. Like Defendant, third parties use cookies to track the Class Member's web-browsing activities and profile the Class Member; however, the third parties use their cookies to track each Class Member not only on Defendant's website, but on the many other websites that have incorporated the third parties' code—so that the Class Member can be tracked everywhere on the web.

5

24.    Similarly, the third parties tracking a Class Member visiting on Defendant's web-page assign their own identification codes to the Class Member and share codes with each other, to facilitate their uninterrupted tracking of the Class Member throughout the Class Member's web navigation activities.

25.    Defendant causes cookies to be deposited without the Class Member's permission and before the Class Member has even had a chance to scroll to the privacy policy link positioned at the bottom of Defendant's home page.

26.    Class Members' web browsers include tools that give Class Members some rudimentary privacy controls, including controls to block or delete cookies; however, as further detailed below, Defendant's web pages are coded to circumvent a Class Members' exercise of privacy controls.

## Lowe's Circumvention of Plaintiff's and Class Members' Privacy Controls

27.    To track Plaintiff and each Class Member regardless of their privacy controls that affected cookie-based tracking, Defendant uses other tracking mechanisms that circumvented those privacy controls. It did so by coding its web pages to store its tracking information—including the IDs it assigned to Plaintiff and each Class Member—in other, non-cookie storage areas on the Plaintiff's and Class Members' computer hard drives.

28.    These other storage areas include LSO files. An LSO (Adobe local shared object) is a type of file created when a website uses Adobe Flash technology, which was designed to enable websites to incorporate video and audio content in their websites. For example, an LSO can be used to store a consumer's audio volume preferences for playing news clips on the Web pages a consumer downloads from a news Website, regardless of which browser (*e.g.*, Internet Explorer, Firefox, Safari) the consumer is using. Flash LSOs were not designed to be used as substitutes

6

and backups for cookies, to circumvent Plaintiff's and Class Members' privacy controls. Although LSOs are not browser cookies, they are sometimes rhetorically referred to as "Flash cookies" they are being used, as in this matter, as a backup or substitute for cookies to circumvent privacy controls.

29. Plaintiff and Class Members are not generally aware that LSO files may be used to circumvent their privacy controls and store tracking information about them, and Plaintiff and Class Members do not have any reasonable means to learn of or control LSO files used for tracking.

30. If the Plaintiff and Class Members engage in self-help by learning about and executing the technical steps required to locate and delete Defendant's cookies and LSOs, Defendant's site sometimes becomes non-functional.

31. Plaintiff and Class Members did not consent to Defendant's use of cookies and LSOs on their computers to circumvent their privacy controls to conduct and facilitate ongoing, web-wide collection of their private information for tracking and profiling.

32. Defendant's pervasive and clandestine actions in accessing Plaintiff's and Class Members' computers in Missouri, and their tracking of Plaintiff's and Class Members' Internet activities, violate Plaintiff's and Class Members' reasonable expectations of privacy, as well as Missouri civil and criminal law. Further, Missouri expressly recognizes that a violation of its criminal statutes prohibiting computer tampering trespass gives rise to and affords Plaintiff and Class Members a civil right of action. *See* Mo. Rev. Stat., § 537.525.

33. The market for this consumers' private information is so robust that exchanges have been established where companies can quickly and efficiently buy and sell the information they have gathered by invading consumers' privacy rights.

7

.34.    Armed with the knowledge that the data collected from unsuspecting Internet users is worth so much, Defendant uses cookies and Flash LSOs to access computers in the State of Missouri owned by Plaintiff and Class Members to collect valuable data without their knowledge and consent.

35.    Defendant generated revenue from third parties by using Plaintiff's and Class Members' computer hard drives for tracking, enabling the third parties' to do so, and by sharing tracking information with those third parties.

36.    Defendant did not share this revenue with Plaintiff and Class Members.

37.    Defendant's actions in this regard were in violation of Plaintiff's and Class Members' privacy rights under Missouri law.

## Damages Resulting from Lowe's Conduct

38.    Plaintiff has suffered actual and nominal damages as a result of Defendant's unlawful actions as alleged herein. Categorically, the type and nature of damages sustained by Plaintiff are the same or substantially similar to such damages sustained by Class Members. Accordingly, damages alleged hereafter will be alleged as Plaintiff's damages which have been incurred individually and collectively by the Plaintiff and each of the Class Members.

39.    Defendant's unauthorized and unlawful attachment of tracking devices to Plaintiff's respective computer, as described and explained herein, has caused physical damage to the Plaintiff's computer inasmuch as such tracking devices are considered to be computer contaminants which cause injury to the computers' data storage and processing capabilities and otherwise interfere with Plaintiff's intended uses and purposes for her property. Defendant's Flash LSOs unlawfully and without authorization identified, acquired, and conveyed Plaintiff's personal, financial and browser history information back to Defendant for Defendant's use, benefit, and fi-

8

nancial gain. The data and information harvested by Defendant has an economic value for purposes of marketing, research, and shopping profile purposes. Defendant's theft of such data and information without notice or compensation to Plaintiff has deprived Plaintiff of said economic value.

40.     Defendant's website does not offer any form of notice or opt-out capabilities which would reasonably allow a website visitor to prevent the attachment of Defendant's Flash LSOs to his or her computer. Nor does Defendant offer anti-Flash cookie devices or applications which would permit a website visitor to remove or otherwise decontaminate his or her computer from Defendant's tracking devices. Consequently, Plaintiff has incurred damage in the sense that there is an economic expense associated with the professional removal of the Defendant's tracking devices and the repair of the damages described above.

41.     In addition to the actual damages as described herein above, Plaintiff has also incurred unspecified nominal damages recoverable at law as a result of Defendant's unlawful conduct.

42.     Plaintiff and each Class Member have sustained and/or will imminently sustain losses, injuries, and damages which include, but are not limited to:

> A. The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;
>
> B. The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;
>
> C. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files

9

Lowe's   129

and code Defendant placed and/or caused to be placed on those computers;

D. The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

E. The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics, and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties,

10

Lowe's 130

profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

## CLASS ACTION ALLEGATIONS

43.    Pursuant to Missouri Rule of Civil Procedure 52.08, Plaintiff brings this action on her own behalf and on behalf of a proposed class of all other similarly situated persons ("Class Members" of the "Class") consisting of:

> all persons residing in the State of Missouri who used computers in the State of Missouri, and whose computers, and/or computer systems, networks, programs, and/or data residing on or connected to those computers, were, through Defendant's conduct, modified, damaged, accessed, and/or altered, and/or whose private information was acquired without such persons' authorization or consent.

44.    Excluded from the Class definition are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

45.    The Class is comprised of over one thousand persons located in the State of Missouri. It is therefore impractical to bring all members of the Class before the Court individually.

46.    There exist questions of law and fact common to all members of the Class. These common questions of law and fact predominate over any individual questions affecting Class Members. Common legal and factual questions include, but are not limited to, the following:

> A. Whether Defendant modified, damaged, accessed and/or altered Plaintiff's and Class Members' computers;

11

B. Whether Defendant disclosed or took data, programs, or supporting documentation, residing or existing internal or external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

C. Whether Defendant acted with intent;

D. Whether Defendant had authorization to modify, damage, access and/or alter Plaintiff's and Class Members' computers;

E. Whether Plaintiff and Class Members are entitled to compensatory damages, and the amount of such damages;

F. Whether Defendant's privacy policy discloses the use of Flash LSOs;

G. Whether Defendant's privacy policy is misleading;

H. Whether Defendant's privacy policy is even applicable to the Plaintiff and Class Members;

I. Whether a privacy policy is binding when the Flash LSOs are placed before the policy can be read and Class Members exit the site;

J. Whether the data on Plaintiff's and Class Members' computers is their personal property;

K. Whether selling data gather from Plaintiff's and Class Members' computers constitutes conversion of their property;

L. Whether Defendant's tracking of Plaintiff's and Class Members' web activity constitutes an invasion of privacy;

M. Whether Plaintiff and Class Members are entitle to recover for the following damages and injuries:

　　i.　The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;

　　ii.　The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

12

Lowe's   132

    iii.    The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

    iv.    The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

    v.    The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

    vi.    The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

    vii.    The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

    viii.    The out-of-pocket costs to Plaintiff and Class Members of re-pairing their computers due to impaired performance and de-creased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

    ix.    The out-of-pocket costs to Plaintiff and Class Members of re-placing their computers before the expiration of those comput-ers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

    x.    The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

13

Lowe's  133

        xi.    The fair market value of the personal and web browsing infor-
mation Defendant took and/or caused to be taken from Plaintiff
and Class Members;

        xii.    The fair market value of any reports, analytics and analysis of
the personal data taken in violation of Missouri law; and

        xiii.   Disgorgement of the increased value of Defendant's web prop-
erties, profit from merchandise sales, and any additional reve-
nue obtained as a result of Plaintiff's personal data that De-
fendant took and/or caused to be taken, and Defendant's other
illegal and improper conduct.

47.     The claims of the representative Plaintiff are typical of the claims of the Class in

that:

A. Plaintiff's computer, like the computers of all Class Members, was ac-
cessed and altered by Defendant;

B. Plaintiff, like all Class Members, has been damaged by Defendant's
unlawful actions; and

C. The factual basis and causes of action for the claims Plaintiff asserts
are common to all Class Members and represent a common thread of
misconduct resulting in injury to all Class Members.

48.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has

no interests which conflict with the Class, and have retained attorneys who are experienced in the

prosecution of complex consumer class action litigation involving computers and the Internet.

49.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joining all members in impracticable, and this action will

be manageable as a class action. There will be no difficulty in the management of this class ac-

tion.

50.     Prosecuting individual actions would unduly increase the cost of litigation and

cause delay, not only to Plaintiff and Class Members, but also to Defendants and the Court.

Lowe's    134

51.    In contrast, a class action will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

52.    Class treatment of the claims asserted by Plaintiff is superior to other methods of adjudicating the claims of the Class in that:

> A. The prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards of conduct for Defendant;

> B. Adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the separate adjudications or would substantially impair or impede their ability to protect their own interests; and

> C. Class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Courts.

53.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## COMPUTER TAMPERING IN VIOLATION OF MISSOURI LAW

54.    Plaintiff re-states and incorporates paragraphs 1-53 as if fully set out herein.

55.    Defendant's unlawful actions were perpetrated against Plaintiff and Class Members in violation of Missouri's Computer Tampering Statute, Mo. Rev. Stat. § 537.525, and §§ 569.095 (tampering with computers) 569.097 (tampering with computer equipment), and 569.099 (tampering with computer users).

15

56. For purposes of this act, Plaintiff and Class Members are the owners or lessees of

the computer systems, computer networks, computer programs, computer services or data that

are subject to Defendant's tampering activities.

## Tampering With Computers

57. Defendant violated Mo. Rev. Stat., § 569.095 by:

    A. Modifying or destroying data or programs residing or existing internal to Plaintiff's and Class Members' computers, computer systems, or computer networks;

    B. Modifying or destroying data or programs or supporting documenta- tion residing or existing external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

    C. Disclosing or taking data, programs, or supporting documentation, re- siding or existing internal or external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

    D. Disclosing or taking a password, identifying code, personal identifica- tion number, or other confidential information about Plaintiff's and Class Members' computer systems or networks that is intended to or does control access to the computer system or network;

    E. Accessing Plaintiff's and Class Members' computers, a computer sys- tems, or computer networks, and intentionally examines information about them, including their personal, financial, and web browsing in- formation and other personal and private information and data stored on their computers; and/or

    F. Receiving, retaining, using, or disclosing data Defendant knows or be- lieves was obtained in violation of this subsection.

58. Defendant's tampering with computer data was done knowingly and without au-

thorization or without reasonable grounds to believe that it had such authorization in that De-

fendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's

and Class Members' computers before they had the opportunity to review or agree to the place-

ment of tracking devices on their computers.

16

## Tampering with Computer Equipment

59. Defendant violated Mo. Rev. Stat § 569.097 by:

    A. Modifying, destroying, damaging, or taking equipment or data storage devices used or intended to be used in Plaintiff's and Class Members' computers, computer systems, or computer networks; and/or

    B. Modifying, destroying, damaging, or taking Plaintiff's and Class Members' computers, computer systems, or computer networks.

60. Defendant's tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's and Class Members' computers before they had the opportunity to review or agree to the placement of tracking devices on their computers.

## Tampering with Computer Users

61. Defendant violated Mo. Rev. Stat § 569.099 by:

    A. Assessing or causing to be assessed Plaintiff's and Class Members' computers, computer systems, or computer networks; and/or

    B. Denies or causes the denial of computer system services to an authorized user of such computer system services, which, in whole or in part, is owned by, under contract to, or operated for, or on behalf of, or in conjunction with another.

62. Defendant's tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's and Class Members' computers before they had the opportunity to review or agree to the placement of tracking devices on their computers.

63. Defendant's tampering with computer data, equipment, and users directly and proximately caused injury and damages to Plaintiff's and Class Members' tangible and intangible

17

property, including injury and damage to their computers, computer systems, and computer, and

to their personal facts, information, and other data stored thereon. More specifically, Plaintiff and

Class Members have sustained losses, injuries, and damages which include, but are not limited

to, the following:

> A. The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;

> B. The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

> C. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

> D. The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

> E. The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

> F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

> G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

> H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted,

18

Lowe's  138

and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendants and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

64. In accordance with Mo. Rev. Stat § 537.525, Plaintiff and Class Members are enti-

tled to pursue civil claims for relief to recover compensation for their damages as alleged above,

and for the costs and reasonable attorneys' fees incurred with regard to bringing this action.

## COUNT II
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

65. Plaintiff re-states and incorporates paragraphs 1-64 as if fully set out herein.

66. Missouri's Merchandising Practices Act prohibits [t]he act, use or employment by

any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair prac-

tice or the concealment, suppression, or omission of any material fact in connection with the sale

or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat § 407.020.43.

19

Lowe's  139

67.   Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that:

> A. Defendant stored and used repurposed Adobe Flash LSOs on Plaintiff's and Class Members' computers without adequate notice or consent.
>
> B. Defendant disclosed Plaintiff's and Class Members' personal information to third parties without consent and authorization.
>
> C. Defendant represented that website users could avoid being tracked by disabling browser cookies.

68.   Defendant concealed, suppressed, or omitted the material fact that it would collect and obtain the private information of Plaintiff and Class Members in connection with the sale and/or advertisement of goods and/or services offered on its website.

69.   Defendant surreptitiously took from Plaintiff and Class Members personal information they did not want Defendant to have and which exceeded Defendant's authorization to take, and pursuant to privacy policies in which Defendant misleadingly described what it would take and how—which personal information Defendant then exploited to derive for itself lucrative gains from its advertising business; and (2) Defendant consumed the valuable computer resources belonging to Plaintiff and Class Members in the process.

70.   The personal information of Plaintiff and Class Members was property belonging to them. In addition, the right of Plaintiff and Class Members to use their computers, without having repurposed LSOs placed on them, constituted a significant right relating to the use of specific personal property, without interference by Defendant through deception, false pretenses, misrepresentation, and unauthorized access.

20

Lowe's 140

71.     Plaintiff and Class Members have purchased merchandise from www.lowes.com

primarily for personal, family, or household purposes and thereby suffered an ascertainable loss

of money or property, real or personal, as a result of Defendant's unlawful conduct as alleged

herein.

72.     Plaintiff and Class Members have sustained and/or will imminently sustain losses,

injuries, and damages which include, but are not limited to, the following:

> A. The effectively permanent diminution in value and utility of computers
> purchased and owned by Plaintiff's and Class Members' computers
> due to the presence and operation of undesirable Flash LSOs and other
> tracking files and code Defendant placed and/or caused to be placed on
> those computers, and which impaired the performance of privacy and
> security functions on those computers;
>
> B. The diminished fair market value of Plaintiff's and Class Members'
> computers due to the presence of undesirable Flash LSOs and other
> tracking files and code Defendant placed and/or caused to be placed on
> those computers;
>
> C. The fair market value of the hard drive space on Plaintiff's and Class
> Members' computers occupied by Flash LSOs and other tracking files
> and code Defendant placed and/or caused to be placed on those com-
> puters;
>
> D. The cost of hiring computer consultants to identify and remove Flash
> LSOs and other tracking files and code Defendant placed and/or
> caused to be placed on Plaintiff's and Class Members' computers;
>
> E. The cost of purchasing and installing software to remove and prevent
> re-installation of Flash LSOs and other tracking files and code De-
> fendant placed and/or caused to be placed on Plaintiff's and Class
> Members' computers;
>
> F. The fair market value of the hard drive space on Plaintiff's and Class
> Members' computers occupied by software installed to remove and
> prevent re-installation of Flash LSOs and other tracking files and code
> Defendant placed and/or caused to be placed on those computers;
>
> G. The decreased performance and diminished functionality over time of
> Plaintiff's and Class Members' computers as a result of Flash LSOs

21

Lowe's  141

and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

## COUNT III
## CONVERSION

73. Plaintiff re-states and incorporates paragraphs 1-72 as if fully set out herein.

74. Defendant's unlawful actions as alleged above also constitute Conversion of Plaintiff's and Class Members' personal property in tortious violation of Missouri common law, for which they are entitled to recover their actual and nominal damages as alleged herein.

75. Plaintiff and Class Members own and are entitled to possession of their computers, computer programs, computer systems, and computer networks, which constitute their separate respective items of personal property. Likewise, Plaintiff and Class Members own and are enti-

22

tled to possession of the electronic diary of private and proprietary data, (*i.e.* personal, financial, and web browsing facts, and other personal and private information), as recorded and maintained on their respective computers, which also constitute Plaintiff's and Class Members' personal property.

76. Defendant intentionally deployed LSOs for the purpose of unlawfully taking possession of and exerting dominion and control over said items of personal property with an intent to exercise some control them and in denial of or inconsistent with Plaintiff's and Class Members' rights and interests therein. Examples of Defendant's distinct actions in this regard would include, but are not limited to, the following:

> A. Accessing and commandeering Plaintiff's and Class Members' computers and computer files without their knowledge, consent, or authority;
>
> B. Infesting said computers with instructional code that contaminated, altered, and/or interfered with the normal settings, processes, and operations of the computers;
>
> C. Commanding said computers to secretly record and transmit back to Defendant the electronic diaries of certain personal, financial, and web browsing information stored thereon;
>
> D. Harvesting, viewing, analyzing, aggregating, and otherwise manipulating said private information for Defendant's marketing purposes; and
>
> E. Secretly taking, transferring, and appropriating said personal and private property for Defendant's own economic gain, and depriving Plaintiff and Class Members from any of the proceeds thereof.

77. As a result of Defendant's actions described above, Plaintiff and Class Members were deprived of the right to possess their computers, computer programs, computer systems, and computer networks, as well as the personal and private information residing thereon.

23

78. Defendant's intentional exercise of dominion or control over Plaintiff's and Class Members' property seriously interfered with the right of Plaintiff and Class Members to control said property such that Defendant may justly be required to pay Plaintiff and Class Members the full value of the property.

79. Defendant's actions constituting Conversion directly and proximately caused injury and damages to Plaintiff's and Class Members' tangible and intangible property, including injury and damage to their computers and computer programs, and to their personal facts, information, and other data stored thereon. More specifically, Plaintiff and Class Members have sustained and/or will imminently sustain losses, injuries, and damages, which include, but are not limited to, the following:

> A. The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;

> B. The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

> C. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

> D. The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

> E. The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

24

F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

## COUNT IV
## COMMON LAW TRESPASS TO CHATTELS

80. Plaintiff re-states and incorporates paragraphs 1-79 as if fully set out herein.

25

Lowe's 145

81.    Defendant's actions as alleged above also constitute trespass of Plaintiff's and Class Members' personal property in violation of Missouri common law, for which they are entitled to recover their actual and nominal damages as alleged herein.

82.    Plaintiff's and Class Members' computers, computer programs, computer systems, and computer networks constitute their separate respective items of personal property, of which they had possession.

83.    The right of Plaintiff and Class Members to use their computers without having unwanted tracking devices placed on them constituted a materially valuable right relating to the use of specific personal property belonging to Plaintiff and Class Members.

84.    Likewise, the electronic diary of private and proprietary data, (*i.e.* personal, financial, and web browsing facts and other personal and private information), as recorded and maintained on their respective computers, also constitutes Plaintiff's and Class Members' personal property, of which they had possession.

85.    Plaintiff and Class Members each had and have a legally protected economic interest in their personal information.

86.    By intentionally placing repurposed LSOs on the computers belonging to Plaintiff and Class Members, through deception and in violation of a Missouri penal computer tampering statute, Defendant deliberately intermeddled with chattels of Plaintiff and Class Members, and deprived Plaintiff and Class Members of their right to use their computers without having such tracking devices surreptitiously placed on them.

87.    Defendant's intentional installment and repurposing of Flash LSOs on Plaintiff and Class Members' computers wrongfully interfered with Plaintiff's and Class Members' rights to the private possession of said personal property. Defendant then proceeded to unlawfully take

26

said personal property and carry the same away for its own uses, without notice, consent, or

compensation to Plaintiff and Class Members. Defendant's actions materially impaired the con-

dition, quality, and value of said personal property. Examples of Defendants' actions in this re-

gard would include, but are not limited to, the following:

> A. Secretly invading the Plaintiff's and Class Members' computers and computer files without their knowledge, consent or authority;
>
> B. Contaminating said computers with instructional code and tracking devices that interfered with the Plaintiff's and Class Members' settings, processes, and operations of their respective computers;
>
> C. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to evade detection and deletion, and to automatically respawn if deleted, such that Defendant was actively interfering with Plaintiff's and Class Members' ability to peacefully possess and control their own computers without Defendant watching and recording their actions; and
>
> D. Electronically locating, capturing and forwarding the Plaintiff's and Class Members' computer files containing certain personal, financial, and web browsing information stored therein, and misappropriating the same for Defendant's own economic gain.

88.    Defendant's actions constitute common law tort of trespass to chattels and directly

and proximately caused actual and nominal damages to Plaintiff's and Class Members' tangible

and intangible property, including injury and damage to their computers and computer programs,

and to their personal facts, information, and other data stored thereon. More specifically, Plaintiff

and Class Members have sustained and/or will imminently sustain losses, injuries, and damages

which include, but are not limited to, the following:

> A. The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;

27

B. The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

C. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

D. The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

E. The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

28

Lowe's  148

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

## COUNT V
## INVASION OF PRIVACY BY UNREASONABLE INTRUSION

89. Plaintiff re-states and incorporates paragraphs 1-88 as if fully set out herein.

90. Defendant's actions as described above, and as more specifically alleged in this Count, also constitute Invasion of Privacy by Unreasonable Intrusion upon Plaintiff and Class Members' seclusion and solitude in violation of Missouri common law, for which they are entitled to recover actual and nominal damages.

91. Plaintiff and Class Members own and used computers to which third parties and/or members of the general public did not have access, for purposes they reasonably believed to be private and confidential. The personal and private information residing on Plaintiff's and Class Members' computers and the nature of Plaintiff's and Class Members' computer usage constitute secret and private subject matters. Plaintiff and Class Members have a right to keep that subject matter private.

92. Plaintiff and Class Members used their computers to connect to the Internet via their web browsers, which include privacy controls designed to prevent the improper and unauthorized use of cookies during and after browsing sessions. Plaintiff and Class Members reasonably believed and legitimately expected the website pages they visited, and the information exchanged with or between them and any particular website, constituted a private viewing and/or

29

exchange of information which could not be viewed or recorded by anyone other than the parties to that particular exchange of information. Their expectation of privacy was the same they legitimately expected to enjoy while viewing printed materials in the solitude of their homes or in communicating personal and confidential information over a private telephone line. Plaintiff and Class Members had no reason to suspect or believe that anyone, including Defendant, would be able to tap into their computers, plant a repurposed LSO in a hidden folder, peer into their web browsing activities, and record information they held and considered to be private and confidential. Defendant thus obtained information about Plaintiff and Class Members through unreasonable means. Defendant's unreasonable intrusions upon the privacy of Plaintiff and Class Members were of a kind that would be highly offensive to a reasonable person as the result of conduct to which a reasonable person would strongly object

93.  Defendant's deployment and use of repurposed Adobe Flash LSOs constitute an intentional and unreasonable intrusion upon Plaintiff's and Class Members' solitude and seclusion. Defendant intentionally pursued the course of conduct described herein, in violation of a Missouri computer tampering statute, and knowing, or being substantially certain, that it lacked the necessary legal authority or personal permission to engage in this activity. Examples of Defendant's offensive and intrusive actions in this regard which include, but are not limited to, the following:

   A. Tapping into the Plaintiff's and Class Members' computers, browsing software, and information files;

   B. Contaminating said computers with instructional code and tracking devices which intruded upon and interfered with the Plaintiff's and Class Members' settings, processes, and operations of their own respective computers;

   C. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to unlawfully evade detection

30

and deletion, and to automatically respawn if deleted, such that De-
fendant was actively invading and intruding upon Plaintiff's and Class
Members' ability to privately possess and use their own computers in
the seclusion of their homes and/or other private locations without
Defendants watching, eavesdropping, and recording their every web
browsing action; and

D. Like planting an automated video camera into the sanctity of the most
private portions of one's home, Defendant's tracking devices captured
the Plaintiff's and Class Members' private and confidential data and
activities, *i.e.* their personal, financial, and web browsing information,
and then misappropriated the same for Defendant's own economic
gain.

94. Defendant's actions directly and proximately caused Plaintiff and Class Members

actual and nominal damages they seek to recover in accordance with Missouri law. More specif-

ically, Plaintiff and Class Members have sustained and/or will imminently sustain losses, inju-

ries, and damages which include, but are not limited to, the following:

A. The effectively permanent diminution in value and utility of computers
purchased and owned by Plaintiff's and Class Members' computers
due to the presence and operation of undesirable Flash LSOs and other
tracking files and code Defendant placed and/or caused to be placed on
those computers, and which impaired the performance of privacy and
security functions on those computers;

B. The diminished fair market value of Plaintiff's and Class Members'
computers due to the presence of undesirable Flash LSOs and other
tracking files and code Defendant placed and/or caused to be placed on
those computers;

C. The fair market value of the hard drive space on Plaintiff's and Class
Members' computers occupied by Flash LSOs and other tracking files
and code Defendant placed and/or caused to be placed on those com-
puters;

D. The cost of hiring computer consultants to identify and remove Flash
LSOs and other tracking files and code Defendant placed and/or
caused to be placed on Plaintiff's and Class Members' computers;

E. The cost of purchasing and installing software to remove and prevent
re-installation of Flash LSOs and other tracking files and code De-

31

fendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

## COUNT VI
## UNJUST ENRICHMENT

95.     Plaintiff re-states and incorporates paragraphs 1-94 as if fully set out herein.

Lowe's 152

96. Defendant's actions as described above, and as more specifically alleged in this Count, also constitute Unjust Enrichment, for which Plaintiff and Class Members are entitled to pursue equitable remedies in accordance with Missouri law.

97. Defendant depends on strategic marketing and merchandising in order to maximize sales and profits. The personal and private information belonging to Plaintiff and Class Members as described herein is economically valuable to Defendant because the information is marketable; it facilitates more effective and profitable marketing and merchandising; and is marketable. Through Defendant's use of Flash LSOs and sharing of identifiers with third parties, Defendant has developed methods to acquire such information without paying for it, i.e. by surreptitiously taking it. Defendant intentionally engaged in and perpetrated such conduct against Plaintiff and Class Members, without notice, valid consent, or proper authority, and without paying them any compensation.

98. Defendant was not entitled to receive this valuable personal and confidential information from Plaintiff and Class Members. Defendant benefitted from the information it obtained by using it to improve its marketing and merchandising activities. As a result, Defendant has received, and continues to receive, money to which it is not entitled.

99. Plaintiff and Class Members suffered detriment as a result of Defendant's illegal operative acts, which include, but are not be limited to, the following:

A. Misappropriation of Plaintiff's and Class Members' computers for the purpose of secretly installing coded instructions and tracking devices, which consumed economically valuable storage space and computer processing functions;

B. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to evade detection and deletion, and to automatically respawn if deleted, such that Defendant was actively and repeatedly consuming and interfering with Plaintiff's and

33

Class Members' ability to peacefully possess and use their own computers without Defendant watching;

C. Electronically capturing and taking certain computer files and data belonging to Plaintiff and Class Members which contained economically valuable personal, financial, and web browsing information; and

D. Misappropriating, receiving, and using said computers, files, and personal information for Defendant's own economic enrichment.

100.   Defendant's actions in this regard entitle Plaintiff and Class Members to equitable remedies for Unjust Enrichment inasmuch as Defendant misappropriated and received the benefical use of the Plaintiff's and Class Members' computers, software, storage devices, and the economically valuable marketing information and data stored thereon.

101.   Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiff's and Class Members' expense and in violation of Missouri criminal statutes prohibiting computer tampering, and therefore restitution and/or return of such economic enrichment is required. In this regard the Plaintiff and Class Members are entitled to restitution and other relief which would include, but not be limited to, the following:

A. The effectively permanent diminution in value and utility of computers purchased and owned by Plaintiff's and Class Members' computers due to the presence and operation of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers, and which impaired the performance of privacy and security functions on those computers;

B. The diminished fair market value of Plaintiff's and Class Members' computers due to the presence of undesirable Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

C. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

34

Lowe's   154

D. The cost of hiring computer consultants to identify and remove Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

E. The cost of purchasing and installing software to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

F. The fair market value of the hard drive space on Plaintiff's and Class Members' computers occupied by software installed to remove and prevent re-installation of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

G. The decreased performance and diminished functionality over time of Plaintiff's and Class Members' computers as a result of Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on Plaintiff's and Class Members' computers;

H. The out-of-pocket costs to Plaintiff and Class Members of repairing their computers due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

I. The out-of-pocket costs to Plaintiff and Class Members of replacing their computers before the expiration of those computers' functional life expectancy due to impaired performance and decreased, diverted, and unwanted functionality caused by Flash LSOs and other tracking files and code Defendant placed and/or caused to be placed on those computers;

J. The cost of bandwidth resources consumed by Defendant and for which Plaintiff and Class Members paid in ISP subscription fees;

K. The fair market value of the personal and web browsing information Defendant took and/or caused to be taken from Plaintiff and Class Members;

L. The fair market value of any reports, analytics and analysis of the personal data taken in violation of Missouri law; and

M. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales, and any additional revenue obtained as a result of Plaintiff's personal data that Defendant took and/or caused to be taken, and Defendant's other illegal and improper conduct.

35

## PUNITIVE DAMAGES

102. Plaintiff, individually and on behalf of the Class, hereby disclaims any entitlement to punitive or exemplary damages.

WHEREFORE, Plaintiff, individually and as Class Representative on behalf of all similarly situated persons and/or entities, prays the Court grant certification of this case as a class action pursuant to Missouri Rule of Civil Procedure 52.08 and Mo. Rev. Stat., § 407.025(3); appoint Plaintiff as Class Representative and Plaintiff's counsel as Class counsel; award appropriate monetary damages to Plaintiff and the proposed Class; require Defendant to pay restitution for its unjust enrichment, which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award prejudgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class.

Dated this $\underline{\quad 1st \quad}$ day of October, 2012.

> EVELYN WOOD, Individually, and on Behalf of a Class of
> Similarly Situated Individuals, Plaintiff

Lowe' s 1.56

By:  _____

David L. Steelman, #27334
dsteelman@steelmanandgaunt.com
Stephen F. Gaunt, #33183
sgaunt@steelmanandgaunt.com
Patrick J. Horsefield, #50380
phorsefield@steelmanandgaunt.com
STEELMAN, GAUNT & HORSEFIELD
901 Pine Street, Suite 110
Rolla, Missouri   65401
Tel:     (573) 458-5231
Fax:     (573) 341-8548

COUNSEL FOR PLAINTIFF

Lowe's   157

## Sworn and Binding Stipulation

Before me, the undersigned authority on this day personally appeared Evelyn "Dee"

Wood, known to me to be the undersigned Affiant whose name is subscribed below, who, after

having been duly sworn by me, upon his oath deposed and stated as follows:

1.     My name is Evelyn "Dee" Wood. I am the plaintiff in this lawsuit. I am over the age of eighteen. I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability. I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2.     I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be amended, removed, remanded, or otherwise, seek or accept damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek or accept damages for the class as alleged in the complaint to which this stipulation is attached in excess of $4,999,999 in the aggregate (inclusive of costs and attorneys' fees). I further swear and affirm that I do not and will not seek to recover or accept punitive damages in this case.

3.     I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.

Evelyn "Dee" Wood

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the 15 day of June , 2012.

CASEY L. GIDEON
Notary Public - Notary Seal
STATE OF MISSOURI
Phelps County
My Commission Expires: Sept. 10, 2015
Commission # 11240103

Notary Public

My Commission Expires: 9-10-2015

## Sworn and Binding Stipulation

Before me, the undersigned authority on this day personally appeared Stephen F. Gaunt,

known to me to be the undersigned Affiant whose name is subscribed below, who, after having

been duly sworn by me, upon his oath deposed and stated as follows:

1.    My name is Stephen F. Gaunt. I am the plaintiff and putative class counsel in this lawsuit. I am over the age of eighteen; I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability. I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2.    I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be amended, removed, remanded, or otherwise, as counsel in this case seek or accept damages for any individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek or accept damages for the class as alleged in the complaint to which this stipulation is attached in excess of $4,999,999 in the aggregate (inclusive of costs and attorneys' fees). I further swear and affirm that I do not and will not seek to recover or accept punitive damages in this case.

3.    I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.

Stephen F. Gaunt

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the 25ᵗʰ day of June, 2012.

CASEY L. GIDEON
Notary Public - Notary Seal
STATE OF MISSOURI
Phelps County
My Commission Expires: Sept. 10, 2015
Commission # 11846102

Notary Public

My Commission Expires:  9-10-2015